## VOSE v. PENNY et al.

No. 9666—Opinion Filed April 13, 1920.

Application to File Second Petition for Rehearing Denied May 28. 1920.

(Syllabus by the Court.)

1. **Guardian and Ward—Guardian's Sale—Fraud—Rights of Innocent Mortgagee.**

Where the probate proceedings, as disclosed by the records, are regular, and guardian's sale of real estate for cash, and the purchaser at such sale executes a mortgage upon said lands, the lien of the mortgagee will not be defeated upon proof that the sale was not, in fact, made for cash, but by an exchange of other real estate, where the mortgagee did not participate in this fraud or have notice sufficient to put him upon inquiry.

2. **Election of Remedies—What Constitutes.**

An election of remedies is the choosing between two or more different and co-existing modes of procedure and relief allowed by law on the same state of facts.

3. **Same—Effect of Election.**

When the law gives several means of redress or kinds of relief predicated on conflicting theories, the election of one, with knowledge, and the prosecution to final judgment, operates as a bar to the subsequent adoption of any other.

4. **Guardian and Ward—Election of Remedies—Action to Void Guardian's Deed—Validity of Subsequent Mortgage.**

Where a guardian elects to void the deed given at a guardianship sale, and in his action to void said deed seeks to secure personal judgment against the grantee for the amount of a mortgage placed upon the premises by grantee, and recognizes a proceeding brought against the grantee to foreclose the mortgage and fails to intervene therein, but, instead, pursues his remedy against the grantee to judgment, he is precluded from thereafter raising the question of the validity of the mortgage foreclosed.

5. **Same—Fraud in Sale—Notice of Mortgagee—Evidence.**

The circumstances relied upon to charge mortgagees with notice so as to put them upon inquiry, held, not sufficient to charge notice of fraud in the guardian's sale.

6. **Principal and Agent—Authority of Subagents.**

An agent has no implied authority to delegate his powers to a subagent; and persons employed by him as subagents do not become the agent of the principal, without the principal's consent.

Error from District Court, Grady County; Thos. A. Edwards, Assigned Judge.

Action by Oren Seldon Penny, guardian of his minor children, to cancel conveyances of

real estate and quiet title. Judgment for plaintiffs, and defendant brings error. Reversed.

Ames, Chambers, Lowe & Richardson, Welborne & Bailey, and Barefoot & Carmichael, for plaintiff in error.

F. E. Riddle and Harry Hammerly, for defendants in error.

OWEN, C. J. Certain lands owned by the minors were deeded by their guardian to Mrs. Gillespie, sale being made through the probate court. Immediately after the delivery of the guardian's deed, Mrs. Gillespie and her husband executed separate mortgages on the land to the Alliance Trust Company, the Holmes & Hibbard Mortgage Company, and the Bryan-Gow Investment Company. An action to foreclose the last-mentioned mortgage was begun in the district court June 23, 1913, the mortgagors and M. C. Ringo, who was vested with the apparent title, being made defendants. On the following day, June 24th, action was brought by the guardian in the same court to set aside his deed to Mrs. Gillespie, her husband and M. C. Ringo being joined as defendants. Neither of the mortgagees was made party to the action. These actions proceeded contemporaneously to final judgment, and plaintiff in error, Vose, purchased the land at the foreclosure sale. This action is to cancel the sheriff's deed at that sale; also to cancel the other mortgages executed by the Gillespies and to quiet title in the minors.

The guardian, in the action to cancel his deed to Mrs. Gillespie alleged the existence of the mortgages and the pending action to foreclose the mortgage to the Bryan-Gow Investment Company, and prayed an accounting to determine the amount due under the mortgages, the minors to have judgment against the Gillespies for the amount due, together with the court costs accruing in the foreclosure proceeding. Judgment was rendered in that action setting aside the guardian's deed and re-investing title in the minors. A personal judgment was also rendered against the Gillespies for the amount found to be due under the Bryan-Gow mortgage and the costs in the foreclosure proceeding, and this judgment decreed to be a specific lien on certain real estate owned by the Gillespies. Upon this judgment, the guardian caused execution and order of sale to issue, under which the property covered by this specific lien was sold and the proceeds credited on the judgment against the Gillespies.

It appears the sale made by the guardian to Mrs. Gillespie, although regular in form so far as the record of the county court disclosed, was not, in fact, made for cash as required by statute (section 6757, Rev. Laws 1910), but was in exchange of other real estate. The trial court held the sale in these circumstances was void, and that, the sale being void, the mortgages could not be valid liens. The sale was not void, and, although voidable as against parties to the transaction and persons claiming with notice, may not be set aside against persons claiming through the purchasers without notice. Berry v. Tolleson, 68 Oklahoma, 172 Pac. 630; Penny v. Alliance Tr. Co., 259 Fed. 558.

The question presented as to the Bryan-Gow mortgage is, whether by taking judgment for the amount of the mortgage the guardian elected his remedy and is now estopped from questioning the validity of that mortgage.

An election of remedies is the choosing between two or more different and co existing modes of procedure and relief allowed by law on the same state of facts. The basis for the application of the doctrine is in the proposition that where there is, by law or by contract, a choice between two remedies which proceed upon opposite and irreconcilable claims of right, the one taken must exclude and bar the prosecution of the other. The doctrine of election of remedies is, therefore, generally regarded as being an application of the law of estoppel, upon the theory that a party cannot, in the assertion or prosecution of his rights, occupy inconsistent positions. 9 R. C. L. 956. In First Trust & Sav. Bank v. Bloodworth, 70 Oklahoma, 174 Pac. 545, it was said:

"When the law gives several means of redress or kinds of relief predicated on conflicting theories, the election of one and the prosecution to final judgment operates as a bar to the subsequent adoption of any other."

To the same effect is Herbert v. Wagg, 27 Okla. 674, 117 Pac. 209; Robb v. Vos, 155 U. S. 13, 39 L. Ed. 52; Fowler v. Bowery Sav. Bank, 113 N. Y. 450, 10 Am. St. Rep. 479, 4 L. R. A. 145; Cohoon v. Fisher, 146 Ind. 583; Gaffney v. Megrath, 23 Wash. 476, 63 Pac. 520; Gentry v. Bearss, 88 Neb. 742, 130 N. W. 428. In the last mentioned case an Oklahoma guardian undertook to sell and transfer a mortgage owned by his ward without permission of court, and absconded with the money received therefor. The subsequent guardian prosecuted an action against the bondsmen of the absconding guardian, and later instituted an action to foreclose the mortgage. The action to foreclose was instituted in Nebraska, and the Supreme Court of that state held the action against the bondsmen was such an election of remedies

as to estop the guardian from maintaining the action to foreclose the mortgage.

The action of the guardian, in the instant case, having knowledge of the existence of the mortgage, and taking judgment against the mortgagors for the amount due under the mortgage, elected his remedy, and by such election is precluded from questioning the validity of the mortgage.

The question presented concerning the mortgages to the Alliance Trust Company and the Holmes & Hibbard Company is, whether these mortgagees were innocent encumbrancers for value.

It appears the Holmes & Hibbard Mortgage Company was the agent in this state of the Alliance Trust Company, and appointed G. A. Ramsey district agent in Grady county. Ramsey had an understanding with Ed Shegog, under the terms of which he would share Ramsey's commission on any loan for which application came through Shegog. Shegog shared his portion of the commission with M. C. Cralle. The trial court found that neither the Alliance Trust Company, the Holmes & Hibbard Mortgage Company, Ramsey, nor Shegog had knowledge of any facts sufficient to charge them with notice of any irregularity in the guardian's sale. The court also found that Cralle, while preparing the abstracts for the guardian, to be submitted to the representatives of the Alliance Company, obtained information to the effect that certain property would be taken by the guardian on the deal with the purchaser, and it is urged by defendants in error that this was sufficient to put the mortgagees upon inquiry. It does not appear that this information was conveyed to either of the mortgagees or to Ramsey, their agent. Cralle, at most, was a subagent of Shegog, who was a subagent of Ramsey, and it does not appear that Ramsey had authority from the mortgagees to appoint subagents. Cralle not being an agent of either mortgagee, and not having conveyed his information to Ramsey, the mortgagees must be held to be innocent encumbrancers. In Gaar, Scott & Co. v. Rogers, 46 Okla. 67, 148 Pac. 161, it was said:

"The general rule of law is that an agent has no implied authority to delegate his powers to a subagent; and persons employed as clerks or subagents do not become the agent of the principal, without the principal's consent."

In People's Bank v. Frick, 13 Okla. 179, 73 Pac. 949, it was said:

"An agent or factor has no implied authority to appoint subagents, or to delegate his powers; and persons employed by him in handling his principal's property do not become the agent of the principal, without the principal's consent."

To the same effect is Hoover v. Wise, 91 U. S. 308, 23 L. Ed. 392; Mechem on Agency, secs. 184 to 197.

The mortgages in question, in view of the circumstances of this case, must be held to be valid liens. It appears that Vose purchased at the foreclosure sale under a contract entered into with Mrs. Penny for use of herself and the minor children. It is unnecessary to define the rights of Vose under this sale, or of the minors under that contract. That question is not properly before us.

The judgment of the trial court is reversed, with directions to grant a new trial and proceed in accordance with the views herein expressed.

JOHNSON and McNEILL, JJ., dissent. BAILEY, J., being disqualified, did not participate. The other Justices concur.

———————

Dissenting Opinion Filed April 27, 1920.

McNEILL, J. (dissenting). . I am unable to agree with the opinion of the majority for the reasons hereinafter stated.

A brief statement of a history of the facts in the case discloses that Mr. and Mrs. Penny were enrolled citizens of the Choctaw Nation, and resided at Chickasha, Oklahoma, and each had received an allotment, and at the commencement of the transactions involved herein the title to both allotments was in the name of Mrs. Penny. The land consisted of 330 acres in McClain county, which was incumbered in the sum of $15,840.

The Pennys were the parents of four minor children, each of whom had received an allotment consisting of practically 160 acres. The total amount of land owned by Mrs. Penny and the four minors was over 900 acres. A great portion of the same was Washita river bottom lands. The allotments of the minors were evidently considered too valuable for their use and benefit, hence the father and mother, no doubt, lured by the idea of getting rich quick, entered into contracts to dispose of the minors' lands. In April, 1912, Mr. Phillips and the Bryan-Gow Investment Company, real estate agents, succeeded in having Mr. and Mrs. Penny contract in writing with Mr. Gillespie

for an exchange of properties, whereby it was agreed that Mr. Gillespie, who owned lots nine (9), ten (10), eleven (11), and twelve (12), in block seventeen (17) Oklahoma City, incumbered for some $35,000, should exchange his equity for the allotments belonging to the minors and the 330 acres in the name of Mrs. Penny, subject to the incumbrance on Mrs. Penny's land. The contract provided that Mr. Penny should be appointed guardian, and the sale of the minors' property should be carried through the county court, and that Mr. Gillespie should bid upon the same, but instead of paying for the property the same should be an exchange of property. While the guardian's proceedings were being carried through the county court of Grady county for the purpose of divesting the minors of the title to the land and placing the title in Mrs. Gillespie, and during said proceedings, Mrs. Gillespie, prior to the time the guardian's sale was completed, made application to obtain loans upon the land of each of the minors. The applications were made to Ed Shegog, of Chickasha, Okla., who was the agent for the Holmes & Hibbard Mortgage Company and the Alliance Trust Company. On July 10, 1912, guardian's deeds were executed by Mr. Penny, as guardian for all the lands of the minors, to Mrs. Gillespie, and on the same date Mrs. Gillespie executed mortgages upon each allotment to the Alliance Trust Company and the Holmes and Hibbard Mortgage Company. None of these deeds or mortgages were filed for record until the 16th day of July, 1912, when all of them were filed for record at the same time, to wit, at 2:00 o'clock p. m., on said date.

On the 12th day of July, 1912, Mrs. Gillespie executed a note payable to the Bryan-Gow Investment Company in the sum of $2,000, being their commission for making the exchange of said property. A few days after receiving title to the land, Mrs. Gillespie deeded the same to an aunt.

A few days after the Bryan-Gow Investment Company received its note and mortgage for $2,000, it transferred the same to Mr. Phillips. Everything then rested peacefully until the 23rd day of June, 1913, when Mr. Phillips filed suit against Mrs. Gillespie for judgment on the $2,000 note and asked to foreclose the mortgage which covered the 320 acres involved in this controversy. At the time of filing the suit, Phillips executed a bond for costs, signed by Mr. Penny as surety. On the next day, June 24, 1913, Mrs. Penny, as plaintiff, and her four minor children, as coplaintiffs, by Mr. Penny, their guardian, filed an action in the district

court of Grady county against the Gillespies to set aside the deeds the Gillespies obtained to all the land received from the Pennys in the exchange of property, alleging the deeds were obtained by fraud and false representations, and that the conveyance of the minors' land was an exchange of property, and not a sale. The petition further alleged that the Gillespies had executed mortgages on said land to the Holmes & Hibbard Mortgage Company, and the Alliance Trust Company, and the Bryan-Gow Investment Company, and that a suit was pending to foreclose the Bryan-Gow Investment Company mortgage, but the plaintiffs did not have sufficient knowledge as to whether the mortgagees were purchasers for value, and if it developed that they were not purchasers for value, that the minors would ask to have the said mortgages canceled. The American National Bank was made a party defendant to this proceeding for the reason it claimed some interest in the premises.

In January, 1914, judgment was rendered in favor of Mrs. Penny and the four minor children against the Gillespies, canceling the deeds executed by the Pennys to the Gillespies and re-investing the title to all of the farm lands in the Pennys, and canceling the deed Mrs. Penny had received to the Oklahoma City property, and re-investing that title in Mr. Gillespie, and the court then rendered judgment in favor of Mrs. Penny and the minors against the Gillespies for rents while the lands were occupied by Gillespies, and the amount of the incumbrance that the Gillespies had placed upon the lands of the Pennys, amounting to some $23,000, and decreed that said judgment should be a lien upon the Oklahoma City property, which was decreed to be the property of Mr. Gillespie, subject to all incumbrances executed thereon prior to June, 1914. The court also decreed that the American National Bank had no title and interest in and to said premises, but if any, the same was junior to the rights of the Pennys and the minor children. This case was appealed by the Gillespies and the American National Bank to this court, and remained undisposed of until after Mr. Vose acquired the record title to all of the property, both the Oklahoma City property and the property involved in this controversy, and then the appeal was dismissed.

In June, 1914, or some six months after the title to the lands in controversy was re-vested in these two minors, Mr. Phillips obtained a judgment against the Gillespies in the sum of approximately $1,700, and the mortgage was decreed to be a lien upon the

lands of these two minors, this being the mortgage executed by Mrs. Gillespie to the Bryan-Gow Investment Company. Said mortgage was decreed to be a lien subject to the mortgages executed by Mrs. Gillespie to the Holmes & Hibbard Mortgage Company and the Alliance Trust Company. The minors were not made parties to this proceeding.

All proceedings rested quietly until in January, 1915. The status of the minors' property in January, 1915, was as follows: The two minors who were plaintiffs in this action were the owners of the 320 acres in controversy in this action, and there were upon record mortgages executed by Mrs. Gillespie to the Alliance Trust Company in the sum of $4,800 and the mortgage of the Holmes & Hibbard Mortgage Company in the sum of $480 as liens or clouds upon each allotment. These were the mortgages that were referred to by the minors in their petition wherein they alleged they did not know whether the mortgagees were purchasers for value or not. There was also a judgment of foreclosure in favor of Mr. Phillips against Mrs. Gillespie, to which the minors were not made parties, on the Bryan-Gow Investment Company mortgage, which covered the 320 acres in controversy, upon which there was practically $1,700 due. In addition, these two minors and Mrs. Penny and two other minors had a judgment against the Gillespies for approximately $23,000, which judgment was by the court made a lien upon the Oklahoma City property, subject to certain prior mortgages. The judgment of these minors against the Gillespies was more than sufficient to cover the amount of the two mortgages to the Alliance Trust Company and the Holmes & Hibbard Mortgage Company and the judgment of Mr. Phillips, as the judgment against Mr. Gillespie also included certain rents during the time Gillespie was in possession of the farms.

Some time prior to January, 1915, Mr. Vose had become the owner of the Oklahoma City property, which was subject to the $23,000 judgment in favor of the Pennys and some prior incumbrances. We now come to the last and final contract concerning the minors' property, dated January 30, 1915, between Mrs. Penny and Mr. Vose, wherein it was conceived that the best method to handle all the property would be to have the property conveyed to Mr. Vose, and he to hold the same for Mrs. Penny according to this contract. The contract provided Mr. Vose would protect the minors' lands, except in the case of Phillips v. Gillespie, where the two minors' land should be sold; that Mr. Vose should purchase the same at the fore-closure sale, and if it brought more than sufficient to pay the judgment of Phillips, the minors should be paid said amount, and Mr. Vose should hold the title, according to the terms of the contract with Mrs. Penny. It is quite evident that the $23,000 judgment of Mrs. Penny and the minors upon the Oklahoma City property was worrying Mr. Vose to some extent, because it was provided in said contract that this property, which belonged to him, should be sold at execution sale and his appeal dismissed, and he should purchase the same property at the execution sale and hold it for the use and benefit of Mrs. Penny according to the terms of the contract.

After entering into said contract certain correspondence transpired between Mr. Vose and Mr. Penny. After the order of sale was issued in the case of Penny v. Gillespie and the land of these two minors advertised for sale, and although the contract provided that any surplus that the lands brought over and above the amount to pay the Phillips judgment was to go to the minors, it appears that Mr. Vose and Mr. Penny had decided that there should be no surplus, for on the 1st day of March, 1915, Mr. Penny wrote to Mr. Vose, answering a letter received by Penny from Mr. Vose. The letter contained the following statement:

"He does not know any way that we could keep parties from bidding on the lands, more than to be present at the sale, and tell the bidders they would buy a law suit, as the lands were in litigation and the suit pending, and that the only reason the lands were selling were to get the titles clear, and in our own hands again, he states that by doing this it would keep any one from bidding that has sense enough to make money enough to buy with."

The minors' land was advertised to be sold, subject to the $10,560 mortgages, to satisfy a judgment amounting to approximately $1,760 in favor of Mr. Phillips. According to the contract of Mr. Vose and Mrs. Penny, the value of this land was $22,000, or the equity of the minors in the property, conceding for the sake of argument the judgment and mortgage bona fide, was of the approximate value of $10,000. The land was sold March 26, 1915, to Mr. Vose at foreclosure sale for the sum of $1,760. The record disclosed that $1,708 was the amount received by Mr. Phillips to satisfy his judgment, and the other $52 was presumably to pay the court costs and costs of sale. In any event, the title was divested out of the minors and into Mr. Vose, without the minors receiving a dollar therefor. This is

the deed by virtue of which Vose claims absolute title to the land, and under which the opinion of the majority holds that Vose holds the land for Mrs. Penny and the minor children, but does not decide what their rights are under the same.

The contract between Mr. Vose and Mrs. Penny provided for eliminating the judgment of the minors against Mrs. Gillespie in so far as it was a lien upon the Oklahoma City property. How Mr Vose and Mr. Penny regarded this judgment and the way and manner they could deal with the judgment of the minors, is set forth in a letter dated October 10, 1914, written by Mr. Penny to Mr. Vose, wherein it stated as follows:

"He stated that he was still confident that his view of the matter deeding the lands back to my wife by Mr. Gillespie and his wife and aunt, and by my wife and myself as guardian of the children dismissing the suit or acknowledging judgment, that there could be no further attack on the title of the lands by the children, and that the title then would be absolutely perfect."

On the 3rd day of March, 1915, which was two days after Mr. Penny's letter to Mr. Vose advising the way and means to prevent bidders from bidding upon the lands at foreclosure sale, an order of sale was issued in the case of Penny v. Gillespie, directing the sale of the Oklahoma City property subject to certain mortgages amounting to approximately $48,000. The sale was for the purpose of satisfying the judgment of Mrs. Penny and these minors against the Gillespies, or at least to satisfy the same in so far as it was a lien upon the Oklahoma City property. Although the case of Penny v. Gillespie was still pending in this court and undisposed of, the order of sale was issued and the land was advertised and Mr. Vose purchased the property at sheriff's sale for $1,460, or, in other words, purchased his own property at sheriff's sale. By virtue of the execution sale he had extinguished the lien of some $23,000 on the property for the sum of $1,460, and, although the land was sold to satisfy the judgment of the minors, the record disclosed that the minors received no portion of the $1,460. And after paying the costs the balance of the money was used by Mr. Vose and Mrs. Penny in carrying out the terms of their contract of January 30, 1915.

I have heretofore stated the status of the minors' property prior to the date of the contract between Mr. Vose and Mrs. Penny, dated January 30, 1915. After carrying out the terms of the contract between Mr. Vose and Mrs. Penny, which consumed less than six months, it might be well to again look to the status of the minors' property. The two judicial sales as contemplated by the contract between Mr. Vose and Mrs. Penny had taken place and we find the allotments of the minors and all equity they had therein had been wiped out and the record title transferred from them to Mr. Vose without the minors receiving a dollar consideration.

Second. We find that the judgment of $23,000, of which more than $12,000 of the same was in favor of these two minors, had been declared a junior lien upon the Oklahoma City property; that said judgment, in so far as it was a lien upon the Oklahoma City property, which was owned at that time by Mr. Vose, was canceled and eliminated, and the amount paid for canceling the said judgment by Mr. Vose was the sum of $1,460, and no portion of that sum was paid to the minors, but was used by Mr. Vose and Mrs. Penny in carrying out the terms of their contract. So the status of the minors, six months after the contract of Mrs. Penny and Mr. Vose, and as a result of the two contracts entered into by the parents of the minors, left the minors with no allotments, but a worthless judgment against Mrs. Gillespie, and the only part of the judgment which could have been of any force and effect was that portion of the same which was made a lien upon the Oklahoma City property, and that has been eliminated and the minors received nothing therefor.

With the title of the property all appearing in the name of Mr. Vose in September, 1917, the minors, through the same guardian, Mr. Penny, brought suit to cancel the Holmes & Hibbard mortgages and the Alliance Trust Company mortgage, which were held by Mr. Vose. The petition alleged that the Holmes & Hibbard Mortgage Company and the Alliance Trust Company were not bona fide purchasers and took with notice. The petition further asked to have the sheriff's deed of Mr. Vose to the 320 acres of land canceled for the reason the minors were not parties to said suit and not bound by the judgment against Mrs. Gillespie, and that Vose only acquired such rights as Mr. Phillips acquired under the note of the Bryan-Gow Investment Company, and that the Bryan-Gow Investment Company and Mr. Phillips were not innocent purchasers. All the parties answered, denying they had any interest in the premises, except Mr. Vose. He first claimed title by reason of the sheriff's deed. Second, he pleaded the minors had obtained judgment against the Gillespies for the amount of all the mortgages and had elected to pursue the remedies against

the Gillespies, therefore the minors could not question the validity of any mortgages. Third, that the Holmes and Hibbard Mortgage Company and the Alliance Trust Company were innocent purchasers, and he was protected through them. To this petition the minors replied, setting forth the fact that if Mr. Vose purchased at the foreclosure sale, it was by reason of the contract had with Mrs. Penny, and the minors were not parties to said contract, and therefore were not bound by the same.

With the pleadings in this condition I cannot agree with that portion of the opinion of the majority which deals with the deed of Mr. Vose to the minors' property where it says:

"It appears that Vose purchased at the foreclosure sale under a contract entered into with Mrs. Penny for the use of herself and the minor children. It is unnecessary to define the rights of Vose under this sale or of the minors under that contract. That question is not properly before us."

I am unable to agree that this question is not squarely before this court, for the reason plaintiffs ask to have the deed canceled and defendant claims title by virtue of the deed in his answer, and the plaintiffs reply that defendant had obtained said deed according to a contract with Mrs. Penny to which the minors were not parties, and therefore that the same was ineffective.

While the opinion of the majority has reversed the case and remanded it for further proceedings, which will be an accounting between Mr. Vose and Mrs. Penny for the use of the minors under the contract dated January 30, 1915, which prevents the minors from contesting the validity of the three mortgages, but requires Mr. Vose to account for the rents and profits of the farms, and also will include an accounting for the Oklahoma City real estate, all of which Mr. Vose purchased by virtue of the contract with Mrs. Penny, and while this will grant to the minors some protection, yet a reading of the contract between Mr. Vose and Mrs. Penny discloses that Mr. Vose under the contract was placing a $7,000 lien which he purported to have on said premises prior to the rights of the minors, both upon the the farm land and upon the Oklahoma City property, while the district court in the case of Penny v. Gillespie, held that this same claim of $7,000 there presented by the American National Bank, which Mr. Vose represented was inferior to the title of the minors in so far as the farm land was concerned, and inferior to their judgment in the Okla-

homa City property. It seems to me that this court while the case is here should determine whether the district court in hearing the accounting should hold that Mr. Vose will be permitted by contract with the mother to make a lien which the district court held a junior lien a prior lien on the premises in controversy. My objection to this portion of the opinion is that it recognizes a contract between Mr. Vose and Mrs. Penny in dealing with minors' property, and attempts to hold the minors to the terms of said contract. I realize that Mr. Vose would be estopped to claim that he was not bound by said contract, but I cannot agree that the proper remedy to be adopted by this court is to recognize such a contract and to hold it binding upon the minors or that it has any legal effect whatever. My judgment is that neither the contract nor the deeds secured thereunder should be recognized, but should be canceled and held for naught. This would follow the holding of this court in the case of Cameron v. Yarby, 71 Oklahoma, 175 Pac. 206, wherein it was held:

"A guardian cannot make a contract which will bind the person or estate of his ward, unless authorized by a court of competent jurisdiction to enter into such agreement."

See, also, Jones v. Johnson, 72 Oklahoma, 178 Pac. 984.

The opinion of the majority holds that the election of remedies only applies to the Bryan-Gow Investment Company mortgage and judgment, and does not apply to the Holmes and Hibbard Mortgage Company, nor to the Alliance Trust Company. I am unable to understand how a different rule can be applied to one mortgage than to the others. The opinion is based upon the theory that the taking of a judgment by the minors against the Gillespies, wherein said judgment was made a lien upon the Oklahoma City property, was such an election as precluded the minors from questioning the validity of the mortgages. This judgment of the minors against the Gillespies covered all three mortgages, but still a different rule is applied to one than to the others.

It is conceded that Mr. Vose has no other defense to the Bryan-Gow Investment Company mortgage than that of election of remedy, and it is conceded that neither he nor Mr. Phillips nor the Bryan-Gow Investment Company was a bona fide purchaser.

I do not think the election of remedies can be invoked in the case at bar, for two reasons:

First. The plaintiffs are minors and their guardian was implicated in every one of

tne illegal transactions and contracts which resulted in depriving the minors of their property, and certainly any election the guardian might make would not be binding upon the minors unless the minors received some benefit from the same, or the party seeking to invoke said remedy has been prejudiced by such an election.

Second. Mr. Vose, by reason of his contract with Mrs. Penny, has deprived the minors of the opportunity of realizing any benefit upon their judgment against Mrs. Gillespie, and as said judgment in so far as it was a lien upon the Oklahoma City property has been canceled by carrying out the terms of his contract with Mrs. Penny, and the minors have received no benefit therefrom, therefore a court of equity under such circumstances will not permit a plea of election of remedies to enable a party to take advantage of his own illegal contract.

As was said by this court in the case of Alliance Trust Co. v. Choate, 76 Okla. 269, 185 Pac. 113, speaking through Mr. Justice Rainey, the rule relating to election of remedies is as follows:

"The doctrine of election has been generally regarded as being an application of the law of estoppel upon the theory that a party cannot, in the assertion or prosecution of his rights, occupy inconsistent positions." 9 R. C. L. 957.

Again, the court stated:

"It clearly appears that the defendant trust company has not suffered any detriment, and that, as yet, the plaintiffs have not received any benefit under their action against the sureties on the former guardian's bonds."

If we apply the same rule to the case at bar, it seems to me we must reach the same conclusion.

It must be remembered the suit of Mrs. Penny and the minors against the Gillespies included many transactions, and included different transactions from those involved in the case at bar. It included the title to other lands, and it included the rents and damages while the same was held by the Gillespies, and if we apply the same rule, that was applied by Mr. Justice Rainey in the case of Alliance Trust Co. v. Choate, supra, in my judgment the doctrine of election of remedies would not be applicable to the facts in this case.

In reference to the plea of estoppel, the Supreme Court of Colorado, in the case of Kirby v. Union Pacific R. Co., 119 Pac. 1043, stated as follows:

"The doctrine of estoppel by conduct is not available except in defense of a legal or equitable right or claim made in good faith, junior in point of time, against which an elder right ought not to be heard to assert itself, but the doctrine can never be asserted to defend or uphold crime or fraud."

In addition to the reasons stated above, there appears to be a different rule applicable, when dealing with the election of remedies, where the rights of minors are concerned from that where the rights of adults are concerned. None of the proceedings in this case were ever ordered and directed by the county court or the district court, but were prosecuted by the guardian who himself was one of the principals in all the illegal contracts which had for their purpose disposing of the minors' property. This court, in the case of Alliance Trust Co. v. Choate, supra, where the same question was at issue, stated as follows:

"There is no merit in the contention that this action was not authorized. These minors could not elect and did not attempt to do so. The county court directed the bringing of both actions, and the district court found that it was for the best interest of the minors for this action to be tried first, and while the present guardian did not direct the bringing of this action, it appears from the evidence in the record that Mr. Lasater was employed by him to look after the interest of his wards, and said guardian has made no objection to the prosecution of the case."

The case of Alliance Trust Co. v. Choate was cited with approval and followed by this court again in the case of Cushing v. Choate, 77 Okla. 90, 186 Pac. 481.

The rule as stated in Pomeroy on Equity Jurisprudence, volume 1, p. 509, is as follows:

"It is very clear that an infant cannot elect. In cases where an infant, if he had been an adult, would be bound to elect, the court has sometimes deferred the question of election, where this could be done without prejudice to the rights of the other parties, until the infant came of age. The ordinary rule is for the court to direct an inquiry to be made whether it is to the infant's advantage to elect or not, and what election ought to be made. In other words, the court, as a result of a judicial examination, itself makes the election on the infant's behalf."

This rule is supported by the case of Gentry v. Bearss (Neb.) 130 N. W. 428, where the court, in passing upon this question, said:

"The Oklahoma statutes applicable to this inquiry are in the record. They show that the guardian, in the management of the ward's estate, is under the directions of the county court. Gentry v. Bearss, 82 Neb. 787, 118 N. W. 1077; In re Ross, 6 Cal. App. 597,

92 Pac. 671. The evidence discloses that before the present suit was brought plaintiff was ordered by the county court of Grant county, Okla., to bring an action on the bond of the former guardian for the full amount of his defalcation, and that the order was obeyed. That suit is pending in the district court of the county named. The petition therein alleges that the entire estate was squandered, and prays for judgment for $2,000. The trust funds in the hands of the defaulter were approximately $1,700. A witness testified, without objection, to plaintiff's admissions in connection with the bringing of both suits as follows: 'He said that the guaranty company brought the suit. He knew nothing about it, but he wasn't certain whether they brought it in their own name or in his name, but he took no part in bringing the suit; that he had been instructed to sue the bonding company, and that was as far as his interests extended in the matter.' "

There is no contention that the county court ever ordered the guardian to elect and bring suit against the Gillespies.

Plaintiff in error contends that in obtaining the judgment, irrespective of whether any benefits have accrued therefrom, there is such an election of remedies as will preclude the minors from thereafter pursuing a further remedy without considering the fact that the plaintiffs are minors. I cannot agree with this contention, even though the same rule pertains to a minor as to an adult.

The Supreme Court of the United States, in the case of Edward S. Thomas, as Trustee in Bankruptcy, v. Sugarman, 54 L. Ed. 967, stated as follows:

"The trustee in bankruptcy does not, by obtaining a judgment against the bankrupt for the proceeds of a transfer in fraud of creditors, make an election which prevents him from suing in equity to set aside such transfer."

In the case of Register v. Carmichael (Ala.) 53 So. 799, 34 L. R. A. (N. S.) 309, the note on page 310 states as follows:

"The clear weight of authority, though there is some conflict in the decisions, seems to sustain the position taken by the court in Register v. Carmichael, that 'an election, to be conclusive, must be efficacious to some extent at least. The mere bringing of a suit is not determinative of the right. The party against whom the estoppel is pleaded must have received some benefit under his election', or have caused some detriment to the other party."

The doctrine of election of remedies is also stated in Words and Phrases, vol. 3 (1st Ed.) p. 2337, as follows:

"The doctrine of election depends, not on technical rules, but on principles of equity and justice and actual intention. An election made in ignorance of material facts, is, of course, not binding, when no other persons' rights have been affected thereby. So, if a person, though knowing the facts, has acted in misapprehension of his legal rights, and in ignorance of his obligation to make an election, no intention to elect, and consequently no election, is to be presumed. Watson v. Watson, 128 Mass. 152."

The rule stated in R. C. L. vol. 9, p. 958. is as follows:

"Another class of cases exists where there is but one cause of action but in which different or alternative remedies may be pursued. It is permissible to follow these remedies or reliefs independently, even in some cases to judgment, although but one satisfaction can be had."

The petition of the minors against the Gillespies in their joint suit of Mrs. Penny against the Gillespies stated that they did not intend to elect. The record, on page 401, sets out positively that the minors never received any benefit from said judgment.

If we take the facts in the case at bar and construe them according to the law laid down in the case of Watson v. Watson, supra, where it is said:

"So if a person, though knowing the facts. has acted in misapprehension of his legal rights, and in ignorance of his obligation to make an election, no intention to elect, and consequently no election, is to be presumed" —if we apply this rule to the case at bar, it would follow that, when the minors in their petition alleged that they did not intend to make such an election, no such election was made or could be presumed. Again, applying the following rule:

"The doctrine of election depends, not on technical rules, but on principles of equity and justice and actual intention"

—to the facts in the case at bar, the election of remedies does not apply. There are no equities in favor of Mr. Vose upon the Bryan-Gow Investment Company mortgage. It is admitted that he knew the mortgage was without consideration, that it was obtained by fraud, and that the parties from whom he purchased could not bring themselves within the rule of being bona fide purchasers.

There could be no more equity in a case of this kind than there could be where a man bought stolen property knowing at the time he purchased that it had been stolen. In my judgment, the election of remedies has no application to the facts in this case.

The court in the opinion of the majority cites the case of First Trust & Savings Bank v. Bloodworth, 70 Oklahoma, 174 Pac. 545,

and while the syllabus announces the rule laid down by this court, the facts are altogether different, and there was equity in that case, for the party there not only obtained a judgment against the agent for the money, but the money had been garnished in a prior action in the agent's hands and the plaintiffs had interpleaded in said garnishment and claimed the money. Commissioner Davis, who wrote the opinion, attempted to follow the rule laid down by the Supreme Court of Kansas and cited certain Kansas cases to support this theory. These same cases were cited and relied upon in the case of McIntosh v. Lynch, decided by this court, March 16, 1920, but this court refused to follow these, but followed the rule announced in the case of Register v. Carmichael, 169 Ala. 588, 53 So. 799, 54 L. R. A. (N. S.) 309.

In my judgment the only defense available to Mr. Vose is, Were the mortgagees under whom he claims bona fide purchasers? If so, he would be protected, although it is conceded that he is not an innocent purchaser.

I cannot agree with the opinion of the majority that the Holmes & Hibbard Mortgage Company and the Alliance Trust Company were purchasers in good faith, nor with the finding of the court that Mr. Shegog was a subagent. Upon the question of whether Mr. Shegog was a subagent, upon the trial of the case Mr. Shegog was asked the following questions by Mr. Vose's attorney:

"Q. What company or companies, if any, did you represent in the farm loan business, Mr. Shegog? A. I have been representing the Alliance Trust Company. * * * Q. Are you the regular duly authorized agent for the Holmes & Hibbard Mortgage Company, acting through Mr. Ramsey? A. I was, yes. Q. You are not at this time? A. Well, yes."

Mr. Hibbard, of the Holmes & Hibbard Mortgage Company, was asked the following questions:

"Q. How long has Mr. Shegog here to your knowledge been accepting applications and sending them in, either direct or through Mr. Ramsey, to your office for the Alliance Trust Company? A. Oh, I should think it was seven or eight or nine years, possibly."

Mr. Holmes, of the Holmes & Hibbard Mortgage Company, in defining Mr. Shegog's duties, stated:

"Q. Did Mr. Shegog, under his connection with you, have anything to do in the matter outside of as you have stated, furnish the abstract, and the application and the delivery of the check to the borrower and the filing of the mortgages? A. That is all."

It seems to me, when Mr. Vose's attorney proved these facts, he could not now contend that Shegog was only a subagent, and such a finding is contrary to the evidence.

The rule announced in the opinion of the majority that an agent has no implied authority to appoint a subagent or to delegate his power to persons employed by him in handling his principal's property, and such persons do not become the agents of the principal without the principal's consent, certainly cannot be applicable when Mr. Vose produced Mr. Shegog as a witness, who testified that he had been representing the Alliance Trust Company for seven or eight years, and Mr. Hibbard, in defining Mr. Shegog's duties, stated that Shegog's duties were to receive the application, obtain the abstract, file the mortgages, and then deliver the money to the borrower. This was all that was to be done except to inspect the property. Shegog had direct authority and duties that were given him, and which he was delegated to do. This court, in Alliance Trust Co. v. Choate and Cushing v. Choate, supra, held, under similar facts, that the party was the agent; and this is where I think the majority of the court has committed error in holding Shegog as a subagent, and especially after Mr. Vose proved that he was the agent. Of course, if Mr. Shegog was a subagent, the opinion of the majority is correct; but with that I cannot agree.

In determining whether the Holmes & Hibbard Mortgage Company and the Alliance Trust Company were purchasers for value, it must be determined under the rules laid down by this court in the case of Adams Oil & Gas Co. v. Hudson, 55 Okla. 386, 155 Pac. 220, where the court said:

"Purchasers of the land which has been fraudulently transferred to their grantor must establish the good faith of their purchase, and it cannot be presumed."

The court further stated that three things must exist:

"(a) A purchase in good faith; (b) for value, and (c) without notice."

Winsted v. Shank, 67 Oklahoma, 173 Pac. 1041, announced the rule of innocent purchaser as follows:

"A purchaser, or incumbrancer, from the vendee of a guardian's sale, with notice of such fraud as renders the sale void, is not an innocent purchaser, even though he pays a valuable consideration. The essential elements which constitute a 'bona fide purchase', are valuable consideration, absence of notice, and the presence of good faith."

It is further conceded that a person who had notice of a fraudulent transfer may become an innocent purchaser if the person from whom he purchased was an innocent purchaser, provided he was not a party to the original contract. The rule as stated by the United States Supreme Court in the case of Rogers v. Lindsey, 14 L. Ed. 215, is as follows:

"A purchaser with notice may protect himself by obtaining the title of a purchaser for a valuable consideration without notice, unless he be the original party to the fraud. The bona fide purchase purges away the equity from the title in the hands of all persons who may obtain a derivative title, except it be that of the original party, whose conscience stands bound by the violation of the trust, and a meditated fraud."

See, also, the case of Boone v. Childers (U. S.) 9 L. Ed. 588.

Considering, first, the mortgages made to the Holmes & Hibbard Mortgage Company, the records disclose that these two mortgages were made to secure four promissory notes of $240 each. Mr. Vose obtained one of these notes from Mr. Phillips. Now counsel for Vose concedes that Mr. Phillips could not be an innocent purchaser of the Bryan-Gow Investment Company note; so, by applying the rule as stated in the case of Rogers v. Lindsey, 14 L. Ed. 214, when Mr. Phillips obtained this $240 note, made payable to Holmes & Hibbard Mortgage Company, he would be estopped from claiming as a bona fide purchaser and that all the equities would be purged away, as he was a party to the original contract. Then certainly, in my judgment, the holding of the court that this portion of the Holmes & Hibbard Mortgage Company's security is bona fide, and must be protected, would be erroneous and contrary to the rule announced in the case of Rogers v. Lindsey, supra.

The record disclosed that these four notes, while payable to the Holmes & Hibbard Mortgage Company, were for a commission. The record does not disclose how this commission was divided, but it does disclose the Holmes & Hibbard Mortgage Company was to receive a portion of the same, Mr. Ramsey a portion of the same, and Mr. Shegog a portion of the same, and Mr. Shegog was to divide his portion with Mr. Cralle and Mr. Phillips. It was admitted that Mr. Cralle was familiar with all the transactions. Mr. Shegog states that he did not know that the sale of the property from Mr. Penny to the Gillespies was anything other than for cash. He, at that time, was a partner with Mr. Cralle, dividing their profits in the abstract and loan business. Mr. Cralle was familiar with all the facts. Mr. Phillips brought the Gillespies to Mr. Shegog to obtain the loan. Shegog divided his commission with Mr. Phillips, and he testified that Mr. Phillips was very active around his office. Mr. Penny testified that he informed Mr. Shegog that he was making an exchange of the minors' property for the Oklahoma City property, and that Mr. Shegog replied that he hoped he, Penny, would make as much money out of the deal as Dan Garland made out of a similar deal. This, Mr. Shegog denies. Of course, if Mr. Shegog had knowledge of the facts, this would be knowledge to the Holmes & Hibbard Mortgage Company and the Alliance Trust Company, provided he was their agent. At the time Mr. Shegog received the application for the loan, Mrs. Gillespie was not the owner of the land. He was advised that the lands were being purchased from the guardian. He was advised by the application that the purchaser had no other means or property with which to purchase said premises, and when the check for the loan was forwarded to him the check was payable to Mrs. Gillespie and O. S. Penny, guardian. This check further advised Shegog that it was his duty to see that the purchase price was paid. As to what directions the loan company sent with the check to Mr. Shegog it does not appear in evidence. For some reason, they, nor Mr. Vose, have seen fit to introduce those instructions. There could be no other reason for making the check payable to Mrs. Gillespie and Mr. Penny, as guardian, than for the purpose of seeing that the purchase price of the land had been paid; but when Mr. Shegog received said check and simply had the guardian to indorse it, and then delivered it to Mr. Gillespie, who was not borrowing the money, without inquiring if the purchase price had been paid, he certainly was not using the proper diligence to ascertain whether the purchase price had been paid. The manner in which he had the check indorsed—first, by Mrs. Gillespie, and then by Mr. Penny, as guardian—and delivering it to Mr. Gillespie, convinces my mind, beyond any doubt, that he knew of the contract between Mr. Gillespie and Mr. Penny, and was simply helping them carry out the terms of their contract. From the facts that Mr. Shegog and Mr. Cralle were partners, one looking after the abstract and the other the loan business, and Mr. Phillips working around the same office and receiving a part of the commission for bringing persons to the office to obtain loans; that while Mr. Penny was making an exchange of over 900 acres of valuable bottom

farm land for Oklahoma City property, through Mr. Phillips, who was in the office, which exchange and transactions extended over a period of time from April 24, 1912, to July 16, 1912, one of the exchanging parties, Mrs. Gillespie, to complete the transfer, obtained a loan on the land she was receiving, which loan was applied for through Mr. Shegog, to whom Phillips took her, the partner, Cralle, making the abstracts covering all the farming lands—it seems unreasonable to believe and hard to conceive, where entire transactions occurred in this office and each of these three parties was connected with some portion of the transaction, that Shegog should be the only one who knew nothing of the fact that the same involved an exchange of property.

Another incident: Mr. and Mrs. Gillespie acknowledged the mortgage before Mr. Shegog on July 10th; so, at the time of executing the mortgage, he knew they did·not own the property, for the reason the deed had never been filed, and he held this mortgage until the 16th day of July, 1912, at 2:00 p. m, when it was recorded, and it was recorded at the same hour as the deed from Pennys to the Gillespies. I cannot but believe, with all these facts in the record, that Shegog knew there was an exchange of said property being made, or, at least, knew that the purchase price had not been paid, and he had knowledge of sufficient facts which, if he had made inquiry, would have revealed the fact either that there was an exchange of property or that the purchase price had not been paid. I do not believe a simple denial on his part is sufficient to overcome so many strong facts and circumstances. This would bring him within the rule laid down by this court in the case of Brooks v. Reynolds, 37 Okla. 767, 132 Pac. 1091, as follows:

"Where a person has knowledge of circumstances such as would put a prudent person, acting in good faith, upon inquiry, he is chargeable with actual notice of the facts the inquiry would have disclosed."

This court, in the case of Winsted v. Shank, supra, upon the question of bona fide purchaser, said:

"Whatever is 'notice' enough to excite attention and put a reasonably prudent person on his guard and calls for inquiry, is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant with it."

Having reached this conclusion, this being an equity case, the rule laid down by this court in the case of Pyeatt v. Estus, 72 Oklahoma, 179 Pac. 42, applies:

"In a case of equity jurisdiction, this court will examine the whole record, and if it clearly appears that the judgment of the trial court is contrary to the preponderance or weight of the·testimony, or a gross injustice committed, will render such decree as should have been entered, or reverse, with directions for such decree to be entered in the trial court."

The trial court having rendered a judgment in favor of the minors and against the defendant, Vose, we should apply the same rule applied in the case of Board of Equalization of Oklahoma County v. First State Bank of Oklahoma City, decided March 9, 1920, 77 Okla. 291, 188 Pac. 115, which stated as follows:

"Therefore, it appears the trial court arrived at the correct conclusion, although giving a wrong reason for the conclusion. It is a settled rule that a judgment of the lower court will be affirmed, although a wrong reason was given for such judgment. Nance v. Foutz, 68 Oklahoma, 173 Pac. 1038; Kibby v. Binion, 70 Oklahoma, 172 Pac. 1091; McKee v. Title Ins. & Trust Co., 159 Cal. 206, 113 Pac. 104; Scattergood v. Johns, 57 Kan. 450, 46 Pac. 935."

I am of the opinion that the trial court reached the right conclusion, but gave the wrong reason therefor, and that the judgment should be affirmed, but on grounds other than that given by the trial court.

I am authorized to state that Mr. Justice JOHNSON concurs in this dissenting opinion.