### RANDEL v. HECKMAN.

No. 14724—Opinion Filed Jan. 19, 1926

Rehearing Denied March 23, 1926.

Motion to Modify Opinion Denied April 2, 1926.

(Syllabus.)

1. **Limitation of Actions—Land in Indian Territory — Arkansas Law Applicable Where Adverse Possession Began Before Statehood.**

The period of limitation prescribed by Mansfield's Digest of the Statutes of Arkansas is applicable where the adverse possession of land located in the Indian Territory commenced before statehood, and the admission of the state did not operate to substitute a different statute, and the time limit prescribed thereby was applicable until the full time had expired and the cause of action barred thereunder.

2. **Homestead—Acts of One Spouse Ineffectual to Affect Rights.**

Where property has once been impressed with the homestead character, no act or omission on the part of the husband, without the consent of his spouse, can result in depriving such spouse of the benefit of the homestead.

Error from District Court, Muskogee County; Guy F. Nelson, Judge.

Action by A. B. Randel and Elizabeth Randel against P. E. Heckman. Judgment for defendant, and Elizabeth Randel, surviving plaintiff, appeals. Reversed and remanded, with directions.

Bruce & Brewer for plaintiff in error.

Wipperman & Wipperman and Bonds & Brown, for defendant in error.

LESTER, J. The parties will be referred to as they appeared in the court below.

This suit was brought by A. B. Randel and his wife, Elizabeth Randel, against P. E. Heckman, to quiet title to about 28 acres of land in Muskogee county, plaintiffs claiming title by prescription. The record shows that A. B. Randel died pending the litigation, and under section 826, C. O. S. 1921, it was ordered that the case proceed in the name of Elizabeth Randel. Hickman joined issue on plaintiff's petition, and by cross-petition claimed title through deeds executed by Lucy Johnson, deceased allottee. The land was the surplus allotment of Lucy Johnson, a Creek freedman. Plaintiff's claim of title is dependent on the statute of limitations under the laws of Arkansas, which limitation commenced to run prior to statehood. The trial court found in favor of the defendant, and the plaintiff prosecutes this appeal to reverse the action of the court below.

Plaintiffs settled on this land in 1886, before there was any provision for allotment. It appears that they made some effort to be enrolled as Creek citizens, but their claim was denied.

Lucy Johnson, wife of a brother of Elizabeth Randel, allotted the land. The record shows that Lucy Johnson, being old, wanted them to continue on the land and that she gave it to them as their home. The allotment of Lucy Johnson appears to have included this particular tract of land and 40 acres adjoining. Lucy Johnson lived on the latter 40 acres. The Randels constructed a log house and other improvements on the land. They fenced the land, which they now claim, or most of it; cultivated it a large portion of the time; built a three-room box house thereon; put out an orchard of grapes and fruit trees and sold the products from the farm, including the fruit grown on said land, and were living on the land at the time that Lucy Johnson died in July, 1918. The testimony upon the part of the plaintiffs shows that Lucy Johnson gave it to them as their home, and they claimed it as such. When Lucy Johnson died, she sought to devise the said property to certain of her grandchildren. In April, 1922, before the estate was distributed, Heckman acquired the interest of all the legatees to this particular land and to the personal property, which consisted of money in bank amounting to about $1,080.

A number of witnesses testified that Lucy

Johnson, in her lifetime, and as far back as 1903, 1904, 1905, 1906, and possibly later, had said that she had given the place to the Randels, and long thereafterwards referred to it as the Randels' place. The defendant's evidence shows that the Randels never paid any taxes, but the taxes were paid by Lucy Johnson, and after her death by her executor. In the year 1920, the evidence shows, different parties were taken out by those interested in selling the land to look at the place with a view to buying it. They testified to a number of conversations with A. B. Randel, in which he stated that they had only claimed the house, and that he wanted $100, $150, or $200 for it. None of these witnesses testified to having had any conversation with Elizabeth Randel. Heckman testified that, before he bought the place, he went out with one Swanson and had a talk with Randel and his wife. He said that all they claimed was the house.

Swanson testified to the same effect, but on cross-examination, on being asked where the conversation occurred, answered:

"A. In the yard around the house and around the garden. Q. How close was Mrs. Randel. A. Always very close, close enough to hear everything that was going on. Q. Never took stock in the conversation? A. Ever time she would be right out there. Q. What did she say? A. Talked in her Creek way about the place and their right to live there and that sort of stuff."

This is the only witness that testified directly to any conversation with Elizabeth Randel. After Heckman acquired the deed, he leased the land to A. B. Randel for one year by written lease. This lease was not signed by Randel's wife.

A. B. Randel could read and write, but his wife, Elizabeth, could neither read nor write. The evidence shows that she was very old and very ignorant; that she had been living on this place for about 36 years before Heckman bought it.

The court made the following finding:

"The court, being fully advised in the premises, finds: That there were valuable, permanent, and lasting improvements made upon the premises by the plaintiffs and such improvements were made in good faith by plaintiffs under the firm belief that they had title to the premises, and that the plaintiffs are entitled by reason thereof to the benefit of the occupying claimant's act, and are entitled to recover for the reasonable value of such improvements before being dispossessed, to which defendant excepts."

The court made the further finding:

"The court further finds that the plaintiffs.

by their conduct, statements, and representations, have estopped themselves from claiming the land involved in this action, or any part thereof, or any interest therein, except the value of certain improvements made on said land by the plaintiffs."

While the defendant pleaded estoppel, in our judgment, there was no evidence whatever to sustain that finding. Taking the evidence in its entirety, it is clear to us that these aged negroes, especially the wife, did not mislead anybody, either by her conduct or conversation. The fact is, they did not prove any conversation with her.

The principal question in the case is whether or not the plaintiffs acquired title by adverse possession. It is contended by the plaintiff that the doctrine in the case of Reniker v. Kansas City, Ft. S. & M. Ry. Co. et al., 55 Okla. 759, 155 Pac. 255, upholds her contention. In this case the court said:

"In an action to quiet title and for possession of real estate, where plaintiff alleges and relies upon adverse possession for more than seven years, and the plaintiff's evidence is uncontradicted that under a claim of title he improved the property at a cost of several thousand dollars, which from the very nature thereof was permanent and lasting, and defendants made no objection, held: That the construction of such improvements, possession, and control of the property, under the evidence, were hostile and inconsistent with defendant's claim of ownership and constituted a high class of notice of adverse possession."

In the case of Bilby v. Diamond et al., 71 Okla. 40, 174 Pac. 758, the court quotes section 4476 of Mansfield's Digest, which is as follows:

"No action for the recovery of real property, when the plaintiff does not claim title to the lands, shall be brought or maintained when the plaintiff or his testator or intestate, has been five years out of possession" and the court continues:

"The period of limitation prescribed by this section began to run against plaintiff's cause of action from the 16th day of March, 1907, and the admission of the state did not operate to substitute a different statute; but the time limit prescribed thereby was applicable until the full time had expired and the cause of action barred thereunder. The plaintiff commenced his suit on November 16, 1915, which was more than seven years after his right of action had accrued and after the adverse possession of the defendant is alleged to have commenced, and was therefore barred."

It will be seen that the court very plainly held in that case that the advent of statehood did not operate to substitute a different statute.

The entire proof in this case tends to show that for a period of time much longer than the time prescribed by the statute of limitations of Arkansas the plaintiff was in exclusive and notorious adverse possession of the lands and premises.

It is further contended that the plaintiff, A. B. Randel, by entering into a lease with Heckman, the defendant, waived whatever rights the plaintiff might have to said property. On the other hand, it is contended by the plaintiff that it was their homestead, and that the action of A. B. Randel in signing said lease did not deprive the plaintiff Elizabeth Randel of her interest in the said homestead.

We are of the opinion that Elizabeth Randel did not waive any of her right or interest in and to said property by virtue of the fact that A. B. Randel had entered into an agreement with the defendant, Heckman, and that this doctrine is supported by the following authorities:

"Power to waive. When property has once been impressed with the homestead character, no act or omission on the part of the husband, without the consent of his spouse, can result in an abandonment of the homestead by the family. The homestead is for the benefit of the entire family, and such joint interest is to be regarded as paramount to the rights of any individual member thereof. Alton Mercantile Co. v. Spindel, 42 Okla. 210, 140 Pac. 1168; Wares et al. v. Knabe et al., 84 Okla. 63, 202 Pac. 774.

"The fact that the surviving spouse of a decedent is appointed by the county court to administer the estate of such decedent, files an inventory in which the homestead is listed as a part of the assets of the estate, files a final account in which such homestead is listed, and procures the approval of said account and an order of distribution, in which order the court determines who the heirs to such estate are and their respective interest therein, does not deprive such spouse of the right to continue to possess and occupy such homestead in accordance with the terms of Comp. Laws 1909, sec. 5265 (Rev. Laws 1910, sec. 6328); and does not constitute a waiver or abandonment of such homestead so as to authorize the partition of such homestead at the suit of another heir." Pennington v. Woodner-McGaugh, 54 Okla. 110, 153 Pac. 875; Wares et al. v. Knabe et al., 84 Okla. 66, 202 Pac. 774.

This being an equitable action, we think that the judgment of the court was clearly against the weight of the evidence. The judgment of the district court is reversed, with instructions to render judgment for the plaintiff.

NICHOLSON, C. J., BRANSON, V. C. J., and HARRISON, PHELPS, HUNT, CLARK, and RILEY, JJ., concur.

Note.—See under (1) 36 Cyc. p. 833. (2) 29 C. J. p. 951 § 380½; 13 R. C. L. p. 624 et seq.; 3 R. C. L. Supp. p. 67; 4 R. C. L. Supp. p. 824; 5 R. C. L. Supp. p. 704.