## HERREN et al. v. HERREN.

No. 20006. Opinion Filed July 21, 1931.

Rehearing Denied Nov. 3, 1931.

A. R. Carpenter and Simons, McKnight, Simons & Smith, for plaintiffs in error.

Ira A. Hill, W. L. Owen, and H. L. Heiple, for defendant in error.

HEFNER, J. This action was brought in the district court of Alfalfa county by Rebecca Herren against Edgar Herren, Eugene Herren, and Elza Herren, to recover possession of 160 acres of land located in that county and to cancel certain deeds and remove the same as clouds upon the title, and to quiet the title thereto.

Plaintiff, who was the surviving wife of decedent, William H. Herren, claims the right of possession as his heir. Defendants, who were children of decedent by a former wife, claim title under two separate deeds executed by deceased conveying the property to them. The case was tried to the court, resulting in a judgment in favor of plaintiff.

Defendants contend that the judgment is against the clear weight of the evidence. The evidence discloses that, on and prior to April 6, 1912, William H. Herren, deceased, who was at that time a widower, was the owner of the property. On that day he deeded the property to the defendants. The trial court held this deed void for the reason that it did not convey a present interest in the land, and was therefore void as a deed. The deed contained the following clause:

"The said party of the first part hereby and herein reserves to himself, the said party of the first part, a life estate in said land and premises, and the within grant and conveyance is made on the express understanding of all parties hereto that no right, title, interest, nor estate in said land and premises shall vest or inhere in said parties of the second part until the death of said party of the first part."

If it was the intention of the grantor that a present interest was to vest in the grantees, then we think the instrument should be held a conveyance of the property to the grantees subject only to the life estate of the grantor. If it was not his intention to convey a present interest in the property, and no interest was to become vested until after his death, then we think the instrument is void as a deed. What was his intention? For the answer to this question, we must look to the four corners of the instrument. If it was his intention to vest a present interest in the grantees subject to his life estate, then he could commit no waste on the property. In such a case, if oil, coal, salt, or any other mineral, which forms a part of the corpus of the land, were to be discovered during his lifetime, he would not be entitled to the proceeds derived therefrom. If such was his intention after the delivery of the instrument to the grantees, he could not execute a valid lease on the premises for the purpose of developing such minerals. If the grantees in the deed should join him in a lease, the principal derived from the sale of the minerals would go to the grantees and the interest thereon would go to him during his life. To hold the instrument a deed, it must be conceded that it was his intention to convey this valuable right to the grantees at the time the deed was delivered to them, and such right, if it be a valid deed, could not be postponed until after his death; as a life tenant, he could commit no waste.

It is true that the instrument states that the grantor reserves to himself a life estate, and that sentence is followed by the expression that it is "the express understanding of all parties hereto that no right, title, interest, nor estate in said land and premises shall vest or inhere in said parties of the second part until the death of said party of the first part." With that stipulation in the instrument, can it be contended that if minerals were discovered on the premises during the lifetime of the grantor, he would not have the right to use and enjoy the same during his lifetime? Vast sums of money might be realized from the sale of minerals produced from the land during his lifetime, and yet he would have no right to dispose of, use, or enjoy the principal sums so derived, and would be limited to the interest produced therefrom. Under these circumstances, we do not think, in the face of the provision in the instrument, that it was his intention to give a present vested right, so valuable as this, to the grantees in the instrument. We think it was his intention to postpone such rights until after his death. We think the instrument clearly negatives the idea that he intended to convey to his children any interest in the property until after his death, because he says in plain language that the parties of the second part shall have no right, title, interest, nor estate in said premises, nor shall any right vest or inhere in said premises to the parties of the second part until the death of the party of the first part. In the case of Goodale v. Evans, 263 Mo. 219, the Supreme Court of Missouri said:

"Moreover, that language clearly negatives the idea that the grantor intended to convey to the grantee any interest in the property until after his death, for he says

that she is to 'have and hold the premises * * * from and after his death,' etc.

"And in addition to this: The grantor clearly and fully expresses his intention in the latter part of the deed, where he states that 'the intention of the grantor by this deed is to convey said property to said Leah J. Evans for life, to take effect on the death of the grantor,' etc.

"What is to take effect from and after his death? Clearly the conveyance, for that is what the grantor is speaking of, for he says that, by this deed, he intends to convey said property to the grantee, to take effect upon his death.

"This language is too clear for interpretation or construction. The more such an attempt is made the more befogged becomes the meaning of the deed, which is plain upon its face.

"The following adjudications fully sustain our view of this deed: Aldridge v. Aldridge, 202 Mo. 1, c. 572. Long v. Timms, 107 Mo. 512; and Speed v. Railroad, 163 Mo. 111."

The last expression in the quoted clause from the deed seems to clearly indicate that it was the intention of the grantor that no rights should vest in the grantees until after his death.

In addition to the foregoing, the intention of the grantor is clearly shown in the granting clause of the deed, which provides that the grant was not to be effective until after the death of the grantor. The first paragraph of the deed is as follows:

"Know All Men by These Presents:

"That Wm. H. Herren, a widower, of Alfalfa county, in the state of Oklahoma, party of the first part, in consideration of the sum of $1, and other good and valuable consideration, the receipt of which is hereby acknowledged, does hereby grant, bargain, sell, and convey unto his sons, Ezey Herren, Edgar Herren, and Eugene Herren, parties of the second part, and to their heirs and assigns forever, all the right, title, interest, and estate of the party of the first part, after the death of said party of the first part, in and to the land and premises hereinafter described situated in the county of Alfalfa, in the state of Oklahoma, to wit: * * *"

The granting clause specifically provides that grantor "does hereby grant, bargain, sell, and convey * * * all his right, title, interest, and estate * * * **after the death of said party of the first part,** in and to the land and premises. * * *"

The grantor, in effect, says:

"After my death I hereby grant, bargain, sell, and convey unto the grantees all my right, title, and interest in and to said land."

When does he say he makes the convey-ance? After his death. This is not in conflict, but in full accord with the first quotation made hereinbefore from the deed, for there it was said:

"The within grant and conveyance is made on the express understanding of all the parties hereto that no right, title, interest, nor estate in said land and premises shall vest or inure in said parties of the second part until the death of the party of the first part."

Taking both quotations together, the grantor, in effect, has said:

"After my death I convey unto the grantees all my right in and to said lands, and it is expressly understood that no rights vest in the grantees until after my death."

From the foregoing it seems clear that the grantor made no attempt whatever to convey any interest to the grantees until **after his death.** We think it is clear that the deed was not to take effect until after death. The authorities are uniform in holding that there was no intention for it to be effective until after the death of the grantor, then the instrument is void as a deed and is testamentary in character. We hold that it was the intention of the grantor to convey no interest to the grantees until after his death. It necessarily follows that the instrument is void as a deed.

The record further discloses that, on the 23rd day of March, 1923, there was a second deed executed by deceased in which the premises in question were conveyed to the defendants. The trial court held this deed void for the reason that the premises at the time constituted a homestead; that plaintiff, wife of deceased, did not join in the execution of the deed, and that the same was for this reason void. The evidence discloses that plaintiff and deceased were married April 13, 1912, and that immediately after their marriage they moved upon the premises in question, and occupied the same as their home until sometime during the year 1914, at which time they moved to the town of Cherokee for the purpose of educating plaintiff's children; that when they first moved to Cherokee, they rented the home in which they lived; that sometime in the year 1923, they purchased a home in Cherokee, and were living and residing therein at the time of the death of plaintiff's husband. He died August 2, 1924.

Plaintiff testified that at the time she left the premises in question and moved to Cherokee, it was her intention to return and make her home on the farm, and that deceased also intended to return as soon as the children had finished school. Other

witnesses testified that deceased expressed such intention to them.

Defendants offered evidence to the contrary. After hearing all the evidence, the trial court found the issues in favor of plaintiff. We cannot say that this finding is against the clear weight of the evidence. It is well established that whether or not there is an abandonment of a homestead once established must be determined by the intention of the parties. In the case of American State Bank of Covington v. Leforce, 95 Okla. 88, 218 Pac. 1073, this court announced the following rule:

"When the homestead character once attaches to property it will continue to be the homestead until the owner voluntarily changes its character by going away from it with the family with the fixed and definite intention of not returning and occupying it as a home, or forms such fixed and definite intention after leaving it."

To the same effect are the following cases: Japp v. Sapulpa State Bank, 90 Okla. 56, 215 Pac. 1059; McCammon v. Jenkins, 44 Okla. 612, 145 Pac. 1163; Randel v. Heckman, 114 Okla. 190, 245 Pac. 589.

The defendants contend the judgment is erroneous for the reason that the evidence established that deceased had acquired a home in Cherokee, and was there residing at the time of his death, and that by acquiring the home in Cherokee, he abandoned his prior homestead. This court has decided adversely to this contention in the case of German State Bank of Elk City v. Ptachek, 67 Okla. 176, 169 Pac. 1094. It is there said:

"When a homestead character once attaches to land, it continues to be the homestead until the owner voluntarily changes its character, by disposing of the property, or by leaving with the intention, or forming such an intention after leaving, of not returning and occupying it as a homestead. Temporary absence from a homestead does not constitute an abandonment thereof, where there exists a definite and fixed intention to return. Acquiring the title to premises, occupied as a domicile by the owner of the homestead and his family, in a nearby town, does not amount to such a permanent absence from the homestead as to work an abandonment thereof, so long as the intention to return to the homestead exists."

See, also, McCammon v. Jenkins, supra.

Viewing the evidence in the light of these authorities, the judgment is sustained by the evidence, and is affirmed.

CLARK, V. C. J., and CULLISON, ANDREWS, and McNEILL, JJ., concur. LESTER, C. J., and RILEY and KORNEGAY, JJ., dissent. SWINDALL, J., disqualified and not participating.

---

RILEY, J. (dissenting). William H. Herren, now deceased, married Rebecca Herren on April 22, 1912. Sixteen days prior thereto he executed a deed, attempting to convey the remainder interest in the farm in controversy to his three sons of his first marriage. By the majority opinion this deed is held to be testamentary in character for it conveys no interest in presenti. I have some doubt as to the correctness of that holding. I am firmly convinced as to the error of the majority view upon the invalidity of a second deed between the same parties and as to the same land, which second deed was executed more than ten years subsequently. Contained within the provisions of the first deed there was a clause:

"The said party of the first part hereby and herein reserves to himself * * * a life estate in said land. * * *"

That reservation is an idle gesture unless an interest was intended to be granted by the words that preceded and followed it, for, at the time, but for a grant of an interest, the whole of the title was in the grantor. The parties, grantor and grantees by the act of executing that deed, must have intended to do something with the interest in this farm. It is plain that the intention of the owner and grantor, William H. Herren, was to grant and convey unto his three sons the remainder and reserve unto himself a life estate in the land.

The question involved in connection with the first deed is whether grantor, William H. Herren, performed that which he intended—is there contained in the deed a grant? Did an interest in the land by the terms of the deed pass in presenti? If not, that instrument is testamentary in character, and being so it is not a deed.

In Ramey v. Stephney, 70 Okla. 87, 173 Pac. 72, this court held:

"Another cardinal rule of construction is that the grant must be construed to effect the plain intention of the grantor, and if that intention is plain, it controls, regardless of inconsistent clauses which are to be reconciled by the intent deduced from the entire instrument."

It was so held in Smart v. Bassler, 101 Okla. 39, 223 Pac. 352. However, such rule is dependent upon a grant. The only way I can spell an unmodified grant out of this first deed is through the reservation clause. Due to the fact that such a grant is adduced by construction, I am frank to say that I am not without doubt as to the sufficiency

thereof. For the result in this case, that matter is immaterial. Be the decision upon that point as it is, I maintain the conclusion of the majority is in error as to the second deed executed on March 21, 1923, between the same parties and to the same land, held to be void for the reason that the farm in question constituted a homestead requiring the joint grant of the wife, Rebecca Herren. My reasons are:

(1) This second deed (of the year 1923) recites therein, "none of the aforesaid premises being the homestead of the grantor herein."

(2) William H. Herren and Rebecca Herren did not reside upon this farm after the summer of 1914, which was nine years before the date of the second deed.

In Perkins v. Cissell, 32 Okla. 827, 124 Pac. 7, this court held in paragraph 4, of the syllabus:

"Where all the proof shows that a person owning lands removes therefrom and continuously lives on other lands in the county for **five years**, and then executes a deed to the lands, held, that such facts make a prima facie case of abandonment of the lands as a homestead."

In the body of the opinion, this court said:

"A removal from land upon which a party has been living, and a continuous absence therefrom for five or six years, and a conveyance of the land, would surely make a prima facie case of abandonment, and would require proof of an animus revertendi."

As stated, in the case at bar, the continuous absence from the farm in question is nine years.

(3) The grantor, William H. Herren, and Rebecca Herren lived in the city of Cherokee in a rented house until the year 1917, when they left this state and went to Idaho. They later returned from Idaho, purchased a home in Cherokee and lived therein; later they traded this residence for a farm, not the one in controversy, and thereafter purchased another home in Cherokee, where they lived until the death of William H. Herren.

(4) While living in Cherokee, William H. Herren ran for the office of sheriff, voted, and Rebecca Herren voted, as citizens and residents of Cherokee. In the meantime the land in controversy was occupied by defendant Edgar Herren.

It is true that Rebecca Herren, her son and daughter of a former marriage, testified that William H. Herren, during his lifetime, expressed intention of returning to the land in controversy, to live, when the son of Rebecca Herren grew old enough to till the soil. In my opinion, the type of these intentions was insufficient to sustain the homestead character of the land, but they destroy it. These intentions were "dependent on a contingency." In order to sustain the homestead character of this farm, it was necessary that intention to return accompany the abandonment and remain intact.

In Carter v. Pickett, 39 Okla. 144, 134 Pac. 440, this court held:

"Where the removal from the homestead is unaccompanied by a present intention, existing at the time of the removal, to return thereto, but instead by a mere probable future purpose to so do, **dependent on a contingency** which might never happen, the homestead exemption is thereby abandoned."

Here the testimony is that when and if a boy grows old enough to farm, the owner will return. That evidence shows the absence of animus revertendi by the presence of a possibility of a future change in purpose. Moreover, the boy was 20 years of age at the time of trial—quite old enough when the second deed was executed to farm, and, therefore, this evidence shows on abandonment of intention to return by failure to perform upon the occurrence of the contingency as stated. The expressed probable future purpose to return to the farm annihilates the idea of a fixed and existing intention, which must be continuous in order to maintain the homestead character of property not occupied.

Fixed intention, evidenced by overt acts of preparation, may impress lands with a homestead character, without actual occupancy, when and only where actual occupancy, or attempt to occupy, follows the intention without unreasonable delay. Sharpe v. Wright, 88 Okla. 16, 211 Pac. 70; Osman v. Payton, 98 Okla. 194, 223 Pac. 382; Storm v. Garnett, 99 Okla. 284, 227 Pac. 417; Davis v. First State Bank, 65 Okla. 211, 166 Pac. 92; Hyde v. Ishmael, 42 Okla. 279, 143 Pac. 1044; Greenwood v. Wilkinson, 124 Okla. 300, 256 Pac. 46.

In First Nat. Bank of Allen v. Burnett, 122 Okla. 255, 254 Pac. 95, this court said:

"Abandonment of a homestead is a question of fact in which the intent of the parties is controlling."

In Elliott v. Bond, 72 Okla. 3, 176 Pac. 242, this court held:

"When a homestead character once attaches to property, it will continue to be the homestead until **the owner** voluntarily changes its character by going away from it, with the family, with the fixed and definite intention of not returning and occupying it as a home, or forms such fixed and definite intention after leaving it."

With these rules in mind, let us look to the facts and circumstances of this case. Had William H. Herren, in 1912, performed that which he plainly intended to do by the deed of that year, i. e., grant and convey, in presenti, a remainder interest in this farm unto his sons and reserve unto himself a life estate, there would now be no homestead right to this farm in Rebecca Herren, for, upon Mr. Herren's death, the title would be in the sons. By virtue of that solemn and now testamentary document, William H. Herren prevented this farm from being impressed with a homestead right in his then intended bride, now widow. Eleven years thereafter, and when approaching the brink of eternity (one year, four months before his death) he granted and conveyed this property of his estate, by warranty deed, to his sons, and acknowledged the same as his free and voluntary deed, and incorporated therein these words:

"None of the aforesaid premises being the homestead of the grantor herein."

I am of the opinion that Rebecca Herren, as widow of William H. Herren, had no homestead right in and to this farm, but that her homestead right existed in and to the city residence, where for many years she and her husband made their home, and where William H. Herren departed this life.

Assuming that this farm was impressed with the homestead character and a homestead right in Rebecca Herren, then, in weighing the animus revertendi, it appears to me that the contemporaneous acts of the parties speak so loud that their voiced intention cannot be heard.