O. T. SMITH, Ulysses Votaw, and J. Thomas
Votaw, a Minor, Plaintiffs in Error,

v.

Wm. W. FOX and Cecil Votaw, Defendants
in Error.

No. 35988.

Supreme Court of Oklahoma.

Dec. 7, 1954.

Rehearing Denied Feb. 1, 1955.

Application for Leave to File Second Peti-
tion for Rehearing Denied Nov. 1, 1955.

Dissenting Opinion Filed Nov. 1, 1955.

Earl Q. Gray, Ardmore, John J. Stobaugh, guardian ad litem, Tishomingo, for plaintiffs in error.

Don Welch, Don E. Welch, Madill, for defendants in error.

BLACKBIRD, Justice.

This action was originally commenced May 10, 1952, as one for partition, by plaintiff in error, O. T. Smith, as the alleged owner of an undivided one-fourth interest in a tract of land containing approximately 150 acres, situated in Sec. 6, Township 3 South, Range 6 East, Johnston County, Oklahoma. As far as concerns the issues herein, one Cynthia Talley, now deceased, was the tract's original owner, together with other real estate situated in Seminole, Love and Murray Counties. One of these properties was involved in the case of Green v. Votaw, 192 Okl. 136, 134 P.2d 367. The land involved here was the only property described in one of these regular warranty deeds, dated November 7, 1933, executed by said owner and her husband, T. F. Talley, as grantors, purporting to convey separate parcels of their real estate to certain of Cynthia's four grandnephews, who were sons of Lonnie and Marie Votaw. The one of them named as grantee in the deed to the land here involved is Cecil Votaw. Sometime after the deed's execution it was altered by someone (whose identity was never established) by the insertion between the legal description of the land and the

habendum clause of said deed, the following:

"This deed is a gratuitous grant, conditioned: (1) That same should not take effect until after the death of grantors herein, and grantors shall have absolute control over said land receiving the rents and profits therefrom, and shall have power, during their life time, to make good and valid conveyances, by deed or otherwise. Such conveyance, if made, shall become operative on the interest conveyed, and should grantors convey by deed, then this deed shall become null and void. (2) If this estate vests in the grantee, by the deaths of the grantors, then said grantee is prohibited from making any manner of conveyance until said grantee reaches the age of twenty one years, notwithstanding covenants to the contrary herein."

On the same date as that of the deed the Talleys, who had no children, made a joint and mutual will, naming the survivor of the two as sole executors, without bond, and expressing the "desire that all property, real as well as personal, of which" they or either of them might die possessed, should "pass to the survivor in fee simple * * *".

Thereafter, almost four years later, or on July 9, 1937, according to the county clerk's records, the above described deed was received by that official, altered as aforesaid, for filing and recording, from the husband T. F. Talley, with instructions that it be forwarded, after recording, to the grantee therein named, whose address was given as Box 312, Sulphur, Oklahoma, and, who at that time was a minor. Cynthia Talley apparently continued in possession of the land, however, and upon her death a few days later, on July 22, 1937, T. F. Talley procured the admission of the above described will to probate, and, apparently without regard to the above described deed, the land was administered upon as a part of said testatrix' estate.

Thereafter, by deed dated December 28, 1937, the said T. F. Talley purported to convey the land in question, together with the Seminole, Love and Murray County properties, to Cynthia's same four grand-nephews jointly, or in equal undivided shares. Thereafter, when the administration of Cynthia's estate was completed, the probate court, by decree of March 28, 1938, distributed all of said properties to T. F. Talley, as sole devisee under the will, without mention or recognition of either of the above described deeds. Thereafter, Talley exercised dominion over, and received the income from, the land until he died in 1938. After his death, a guardian was appointed for the four minor grandnephews. Said guardian and his successor, Mamie Votaw, the boys' mother, handled the properties deeded the boys by Talley as if they were the joint property of all four and apparently divided the income therefrom in equal shares. In other words, from the way the guardians administered the properties they seemed to recognize the deed executed by Mr. Talley in 1937, rather than the one executed by both him and his wife in November, 1933.

In 1949, after the Votaw family had moved from Oklahoma to Cottle County, Texas, a Dr. W. W. Fox of Oklahoma became interested in purchasing the Johnston County land here involved. On the theory that the Talley deed of November, 1933, vested the title thereto solely in Cecil Votaw, Fox, while Cecil was only eighteen years of age, procured him to obtain a court decree in Cottle County, Texas, purporting to confer majority rights on said minor, which decree is admittedly invalid and ineffectual for that purpose. Fox then, on September 12, 1949, entered into a contract with Cecil Votaw to purchase this land from him for $2,000 with the provision that the title thereto would be cleared at the seller's expense and deducted from the stated consideration. The next month, Cecil gave Fox a deed to the land pursuant to said contract, and received $500 of the agreed consideration. On two later occasions, once when Cecil was twenty years of age and again on September 21, 1951 (one day after he became twenty-one) Fox

obtained successive deeds from him covering the same property.

When the first purported trial was had on the petition for partition of O. T. Smith, who deraigned his title through Mr. Talley's deed of December, 1937, and a subsequent deed from one of the Votaw sons, Arles, to the undivided one-fourth interest thereby purportedly conveyed to him, Smith obtained a default judgment decreeing him, along with the three other Votaw sons, including Cecil, to be the owners of undivided one-fourth interests each in the land and ordering its partition. No specific mention or determination was made in said judgment with reference to the previous Talley deed of November, 1933, in which Cecil Votaw was named the sole grantee of the entire fee. After the commissioners appointed by the Court had determined the inadapatability of the land for partition and had made their report, or on April 6, 1950, the aforementioned default judgment was vacated on motion of Cecil Votaw, and Dr. Fox was allowed to intervene in said action. In his pleading, Cecil Votaw, on the basis of the deed of November, 1933, claimed the entire fee simple title to the land. In replying, Smith asserted that because of the peculiar language of said deed it was not an instrument of present conveyance, but was testamentary in character and therefore ineffective to vest title in its grantee. Thereafter, Fox pleaded his purchase from Cecil and claimed title to the land by his deed dated September 20, 1950, from said vendor. When the case was thereafter tried in October, 1950, the court, without any evidence that Talley's deed of November, 1933, had been altered *after* its execution, rendered judgment on the basis of Talley's 1937 deed determining that Fox, Smith and the two Votaw sons, Thomas and Ulysses, were each the owners of undivided one-fourth interests in the land. From said judgment, Fox perfected an appeal to this Court, but while said appeal was pending, his attorney, by accident discovered the case of Green v. Votaw, supra, learned that the special language, testamentary in character, hereinbefore described, was not in the Talley deed of No-

vember, 1933, when it was executed, and thereupon filed a petition for a new trial on the ground of such newly discovered evidence. Said petition was granted, and Fox' appeal to this Court from the former judgment was dismissed. Upon the new trial of the case, Fox, on the basis of the Talley deed of November, 1933, and his most recent deed, dated September 21, 1951, from Cecil Votaw, was determined to be the sole owner of the land. From said judgment O. T. Smith and Cecil's brothers, Thomas and Ulysses, have perfected the present appeal. They will hereinafter be referred to as appellants, while Dr. Fox and Cecil Votaw, defendants in error, will be referred to as appellees.

 Under their Proposition II, appellants continue their attack on the deed executed by Cynthia Talley and her husband in November, 1933, as a conveyance of title. They say it was insufficient for that purpose because in order to vest title a deed must be *delivered* as well as executed, and here the testamentary language which rendered said deed invalid had already been written into it at the time of its filing, recording and subsequent delivery. Though recognizing and conceding that this language was not in the deed when it was executed, appellants say that as far as the record shows, it was never delivered in its original state, or until altered, and therefore, as originally drawn and executed, it can have no effect as a conveyance. We do not agree. Since it was established that there was nothing in the deed to invalidate it at the time it was executed, we think it became effective as a conveyance, in accord with the intention of its grantors (at that time) upon its delivery at a later date, and without regard to its alteration subsequent to its execution. When the deed was executed, it constituted evidence of the strongest character that it was the intention of its signers to thereby convey to Cecil Votaw the entire fee in the land. Title thereto was previously in Cyntha Talley's name, and as far as the record shows, it was hers to convey to whomever she pleased, without her husband also signing it. When said deed was delivered to the husband, T. F. Talley, for recording

and forwarding to the grantee, Cecil Votaw, it then became absolute as a conveyance. That it was thereafter altered could not affect 'it as such conveyance, unless such alteration was done with knowledge, acquiescence, consent or ratification of Cynthia Talley, who, with the title solely in her name, was the only one who could convey such title. In this connection see Green v. Votaw, supra, 2 Am.Jur., "Alteration of Instruments", secs. 23, 37, 39; 16 Am.Jur., "Deeds", sec. 29; Annotation, 67 A.L.R. 364. There was no evidence that any such consent was given or ratification obtained, or that the deed was, after alteration, redelivered by Cynthia to her husband for recording and delivery to Cecil Votaw. Of course T. F. Talley's subsesquent execution of the purported deed of December, 1937, indicates that at that later date, it was his desire that the title should be vested in all four of the Votaw boys jointly, but his execution of that deed was a nullity in view of the previous vesting of the entire fee simple title in Cecil Votaw by the previous deed. That previous deed having been delivered and the title thereby conveyed having already vested, there was no interest in said land for him to obtain by devise upon his wife's subsequent death. By the same token, he then had no right or interest in this particular land to convey to anyone by his purported deed of 1937.

 Appellants further argue that appellees are now in no position to claim under the deed of November, 1933. They say that the question of its validity was determined adversely to appellees by the District Court's judgment of October, 1950; and that when appellees dismissed their appeal to this Court from said judgment, that determination became final. This argument, however, ignores the significant fact that said appeal was dismissed only when it became apparent that the District Court's judgment was to be superseded and nullified by the new trial said court granted appellants on account of newly discovered evidence as hereinbefore noted.

 Under their Proposition III, appellants urge that the principles which appeared in the doctrine of election to take under wills, should apply to this case. In their argument they refer to the evidence showing that in the Votaw boys' guardianship the property involved herein, as well as the other properties deeded to them by the Talleys, was treated as if the boys owned equal undivided shares in all of them; and they argue on the basis of this and the further fact that Cecil Votaw, like his brothers, received a one-fourth share in the net income from all of the properties, that this constituted an "election" on his behalf to recognize the deed of December, 1937, instead of the one of November, 1933. We cannot agree that the doctrine of election and the receipt of benefits thereunder applicable to those with rights of inheritance in a testator's property, should be extended to such a situation as the one involved here. As hereinbefore pointed out, after the entire fee simple title to the land was vested solely in Cecil Votaw by the deed of November, 1933, there was no interest that could be conveyed in that property by the subsequent deed of December, 1937, and the later deed was wholly insufficient as to that parcel. After such vesting of the title, no conduct on the part of Cecil Votaw's guardian or Cecil Votaw himself, short of the execution of an instrument competent, under our statutes, to alienate or convey title, could diminish the interest that had vested in him by the first deed. Cecil Votaw's position was thus vastly different from that of the surviving spouse who may take property either under a will or under the laws of intestate succession, and may elect under which he or she will take. In that kind of a situation the surviving spouse's right accrues by reason of said spouse's death; and his or her election as to whether she or he will claim under the will or under the law is determinative of the interest he will receive. But this is not true where a party's right, title and interest vests by deed and is measured entirely by the effective terms thereof. In the latter situation, no election the grantee might make, nor benefit he might receive from other properties, can affect the quantum of interest with which he has

become vested by that particular conveyance. We see no application to the present case of the case of Carlile v. Harmon, 179 Okl. 303, 65 P.2d 495, relied on by defendants. The testimony in the present case indicates that Mamie Votaw would have tried to see that her sons benefited equally in respect to the income from the various real estate interests deeded them by the Talleys, no matter how their interests had been described in the conveyance. But such desire or endeavor, either on her part, or on the part of the boys themselves, or their guardian, was wholly incapable or powerless to affect in any way the deraignment of title to the property or the quantum of either's interest in its fee. Whether Cecil Votaw's receipt of the benefits he is said to have received as a result of the above mentioned conduct, came about because of a misapprehension as to the validity of the original deed of November, 1933, or for whatever reason, such receipt could not affect said deed's validity, nor change the quantum of interest he was thereby conveyed. In this connection, see Annotation, 33 A.L.R. 601, 602. Accordingly, the doctrine of election of remedies for which appellants cite Vose v. Penny, 78 Okl. 238, 190 P. 97, has no application to the present case.

■ Appellants say that the fact that Cyntha Talley was still in possession of the land at the time of her death in July, 1937, was strong evidence that the deed of November, 1933, was never delivered in its original form. This contention does not take into account the absence of any evidence indicating *when* that deed was turned over to Mr. Talley for filing, recording and delivering. For all that the record shows, this may not have been done until the day it was recorded, which was less than two weeks before Cynthia's death in 1937. For this reason, we do not consider the fact that the minor, Cecil Votaw, or some adult or legal representative in his behalf, had not yet assumed possession of the land at the time of Cynthia's death, controlling or conclusive evidence that after originally executing the deed and before turning it over to her husband, Mrs. Talley decided to cancel, revoke or repudiate her original absolute grant of the entire fee simple title contained in the deed as originally drawn.

■■ Appellants also assert that, under the above described circumstances, the delivery of the 1933 deed from Cynthia Talley, through her husband, to Cecil Votaw was never complete because it was not accepted by said minor grantee. For such argument to be tenable, the facts must be sufficient to overcome the presumption of acceptance by the grantee which attends delivery of a conveyance for his benefit. See Green v. Votaw, supra, and 16 Am.Jur., "Deeds", sec. 389 et seq. We have examined the evidence with this in mind, and have concluded that it is insufficient to render erroneous or clearly against the weight of the evidence, the trial court's judgment, which, in effect, held that said presumption of acceptance was never overcome.

■ In the remainder of appellants' argument they deal with other matters included in what they call the "equities" of the present situation and not only cast reflections upon the amount of the consideration contracted to be paid by Dr. Fox to Cecil Votaw for the land in question, but they say the latter will be unusually fortunate if he derives any more out of the sale to Fox than the $500 already paid him, by the time the cost of past and present litigation necessary to clear Dr. Fox' title is deducted from said consideration in accord with their contract. We do not think such complaints have any standing coming from appellants. Cecil Votaw is not complaining of any inequity or overreaching in Dr. Fox' contract with him, and it would appear that he is the only one who would have any legal right to so object. We therefore deem such argument unworthy of any consideration.

In accord with the views here expressed the judgment of the trial court is affirmed.

JOHNSON, V. C. J., and CORN, DAVISON and O'NEAL, JJ., concur.

HALLEY, C. J., and WILLIAMS, J., dissent.

WILLIAMS, Vice Chief Justice (dissenting).

I do not concur in the majority opinion because I believe that it does not correctly state the law and reaches an inequitable result.

The first error is readily apparent in the first paragraph of the syllabus which states that "the alteration of a deed subsequent to its delivery will not affect its interpretation as to the quantum of the estate thereby, conveyed." While such statement is not objectionable as an abstract proposition, it certainly has no application to this case since the evidence does not reveal that the alteration of the deed in question was subsequent to its delivery and in fact does not reveal that there was ever any delivery of such deed at all. The evidence reveals only that the deed in question was prepared by the scrivener at the request of grantors and executed by them on November 7, 1933, and that after such execution the deed was retained in the possession of grantors, who were husband and wife. On July 9, 1937, the deed was placed of record by one of the grantors. At the time the deed was recorded it contained restrictive provisions which had apparently been added after the original execution of the deed. The effect of the addition was to make the deed testamentary in character and therefore ineffectual as a deed. Dalton v. Burdick, 188 Okl. 446, 110 P.2d 297; Herren v. Herren, 152 Okl. 281, 4 P.2d 92. The deed as originally executed was never delivered. The only delivery of this deed was that presumed to result from its recording in its altered form by one of the grantors. The recording only gave rise to a presumption that the deed was delivered in the form in which it was recorded, however. There is no possible basis for holding, as the majority opinion apparently does, that the recording of an instrument in a void form gives rise to a presumption of a delivery in a valid and different form.

It is of course elementary that a delivery is essential to the validity and operation of a deed. Andrews v. English, 200 Okl. 667,

199 P.2d 202; Gulley v. Christian, 198 Okl. 167, 176 P.2d 812. And a deed only becomes operative as a conveyance from its delivery. Eldridge v. Vance, 138 Okl. 201, 280 P. 570. Since the deed as originally executed was never delivered, it never became operative as a conveyance. Only the deed as altered was ever delivered and therefore only the deed as altered could have ever become operative. The fact that the deed as altered was void and ineffective for a different reason could in no way supply the delivery necessary to the effectiveness of the deed as originally executed. The majority opinion says, however:

"Since it was established that there was nothing in the deed to invalidate it at the time it was executed, we think it became effective as a conveyance, in accord with the intention of its grantors (at that time) upon its delivery at a later date, and without regard to its alteration subsequent to its execution."

The majority thus hold that one who decides to make a gift of realty and signs and acknowledges a deed accordingly, may not later, but prior to delivery of such deed, change his mind and alter the terms and conditions of the gift as set forth in the deed, and that if he attempts to do so and delivers the deed in its altered form, he will be held to have delivered the deed and made the gift in its original form. I know of no authority for such a holding and do not believe it to be the law. In the first paragraph of the syllabus in Smith v. Smith, 170 Okl. 358, 40 P.2d 634, 635, we said:

"The expression of an intention to make a gift of real property is not a gift of such real property until the donor makes and delivers a deed to the donee conveying such real property to her, and the intention to make a gift of real property may be withdrawn by the donor at any time before the gift is completed by the delivery of such deed." (Emphasis added.)

If a donor can withdraw a gift completely prior to delivering the deed of gift, I see no reason why he could not likewise change

the terms and conditions of the gift or the amount thereof prior to such delivery.

The majority opinion goes ahead to say:

"When said deed was delivered to the husband, T. F. Talley, for recording and forwarding to the grantee, Cecil Votaw, it then became absolute as a conveyance. That it was thereafter altered could not affect it as such conveyance, unless such alteration was done with knowledge, acquiescence, consent or ratification of Cynthia Talley, who, with the title solely in her name, was the only one who could convey such title."

There is no basis whatsoever in the record in this case for such a statement. There is no evidence whatsoever that the deed was delivered to T. F. Talley for recording and forwarding to the grantee and thereafter altered. T. F. Talley was one of the grantors in the deed and the husband of the other grantor. The deed was a gift to a relative of T. F. Talley and not (as the majority opinion states) to a relative of Cynthia Talley. The majority say in effect that there being no proof to the contrary, we will presume that it was not Cynthia's idea to postpone the effect of the deed until her death, that it was T. F. Talley's idea but he couldn't get Cynthia to agree to the change, that Cynthia delivered the deed to T. F. in its original form with instructions to record it, and that T. F. falsely altered the deed without authority, thus committing forgery. All this is pure presumption without any justification in the record. If there is a presumption of any kind in this case it is just the contrary of that made by the majority opinion. The law presumes honesty, fairness and innocence of crime until the contrary is proven. 20 Am.Jur. 217, 221 and 223; Oil State Refining Company v. Bryant, 110 Okl. 83, 236 P. 431; Texas Co. v. State ex rel. Coryell, 198 Okl. 565, 180 P.2d 631. In Farmers' National Bank of Tecumseh v. McCall, 25 Okl. 600, 106 P. 866, 867, 26 L.R.A.,N.S., 217, we said:

"As a general rule, the law presumes in favor of innocence, and that an al-
teration in an instrument is a legitimate part of it until the contrary appears."

The majority opinion now says, however, that we will presume the alteration here to have been made falsely, fraudulently, dishonestly and without the knowledge and consent of the grantor in the absence of evidence to the contrary.

I am of the opinion that the deed to Cecil Votaw, not having been delivered in its original form and being void and ineffective in its altered form, was of no force and effect and that the trial court erred in quieting defendant in error's title to the property in question based on such deed.

There is still another reason why the judgment of the trial court and the opinion of the majority are in error, and that is they reject the doctrines of election and estoppel which, in my opinion, are properly applicable in this case. In so doing they achieve a completely inequitable result by allowing Cecil Votaw to claim under a deed of gift and also to claim adversely to the same deed of gift and thus get a lion's share of property intended for all four Votaw brothers equally. It should be borne in mind that there were four separate pieces of property owned by the Talleys and conveyed by them to the Votaw brothers, and two sets of deeds covering these properties. Under the first set of deeds, Cecil Votaw got all of the property involved here and none of the other three pieces of property and each of his three brothers got one of the other three pieces of property. Under the second set of deeds Cecil Votaw got only an undivided one-fourth interest in the property here involved but also got a one-fourth interest in the other three pieces of property, and the same was true of his three brothers. Obviously the two sets of deeds were inconsistent and equity should not allow Cecil Votaw to claim and receive all of the property involved here under the first set of deeds and at the same time claim and receive a one-fourth interest in the other three properties under the second set of deeds, and yet that is just what the majority opinion does.

The evidence conclusively establishes an election to take under the second set of

deeds on the part of all parties concerned. The majority opinion recognizes this, saying:

"Said guardian and his successor, Mamie Votaw, the boys' mother, handled the properties deeded the boys by Talley as if they were the joint property of all four and apparently divided the income therefrom in equal shares. In other words, from the way the guardians administered the properties they seemed to recognize the deed executed by Mr. Talley in 1937, rather than the one executed by both him and his wife in November, 1933."

Actually the evidence goes much further than indicated by the majority opinion. The guardians not only divided the income from the property between the boys, as stated in the majority opinion, they also sold all of the properties except the one involved here and all four boys shared equally in the proceeds of the sales of these other properties. Only the property here involved remains and Cecil Votaw now claims all of it, after having already received one-fourth of the other three properties. Furthermore, not only did the guardians elect to take under the second deed, but Cecil Votaw himself also elected after becoming of age by selling his one-fourth interest in some minerals reserved by the guardian out of the Love County land, to which his only basis of title was the later deed by T. F. Talley to all four boys jointly.

Although it is clear that an election was made, the majority opinion refuses to recognize this election as binding, saying:

"As hereinbefore pointed out, after the entire fee simple title to the land was vested solely in Cecil Votaw by the deed of November 1933 * * *. After such vesting of the title, no conduct on the part of Cecil Votaw's guardian or Cecil Votaw himself, short of the execution of an instrument competent, under our statutes, to alienate or convey title, could diminish the in-

terest that had vested in him by the first deed."

Such is not the law. There are many ways a person may lose his property without making a deed to it, such as by election, estoppel or adverse possession. Such holding completely repudiates the well-established law of election under a will or deed of gift. It is true that such law of election finds its most frequent application in connection with wills. See for example Carlile v. Harmon, 179 Okl. 303, 65 P.2d 495, 496, wherein this court said:

"If he shall take a beneficial interest in the estate under the will, equity will hold him to his choice, and it will be conclusively presumed that he intends thereby to ratify and conform to every part of it. This presumption of a ratification of the will on his part is applicable though the testator has attempted to give away property belonging to him. He cannot accept the instrument so far as it benefits him and reject it so far as it gives away his property, for it is against equity and good conscience that a person should hold property given or devised by virtue of the will which he should not do without it, and at the same time defeat some of its provisions by asserting his paramount claim to that which, by the will was intended to benefit others."

See also 69 C.J. 1092 and 57 Am.Jur. 1060. That such principle is likewise applicable to deeds, however, see Pomeroy's Equity Jurisprudence, 4th Edition, Vol. 1, Section 470, wherein it is stated:

"Doctrine Applies Both to Wills and Deeds. It may be added that the doctrine of election, as generally described in the foregoing paragraphs, applies to all instruments of donation,— to deeds, settlements, and the like, as well as to wills,—although the cases involving it have most frequently arisen under wills."

And in Harber v. Harber, 158 Ga. 274, 123 S.E. 114, 115, 33 A.L.R. 598, the court defines the doctrine of election as follows:

> "The doctrine of election is based upon the salutary principle, that 'he who accepts a benefit under a deed or will must adopt the whole contents of the instrument, conforming to all its provisions, and renouncing any right inconsistent with it.'"

Although the majority opinion refuses to adhere to the foregoing authorities, it cites no authority to the contrary. It cites only Annotations, 33 A.L.R. 601, 602, but that authority recognizes the correctness of the law of election and merely points out that the *unsuccessful* assertion of a claim under or against a will does not amount to a conclusive election for or against it. I am unable to see the applicability of such citation here, however. Certainly there has been nothing unsuccessful about Cecil Votaw's assertion of a claim under both sets of deeds up to this time. On the contrary, the effect of the majority opinion is to make Cecil Votaw's assertion of such claim eminently successful.

Closely akin to the law of election is the doctrine of estoppel, which in my opinion is also applicable here. It should be remembered that in this case Cecil Votaw and his grantee Fox are attacking the validity of the second set of deeds under which Cecil would only have one-fourth of the property involved here but under which he has already received one-fourth of the other three properties. In Kaylor v. Kaylor, 172 Okl. 535, 45 P.2d 743, we said that one knowingly receiving and accepting benefits of any part of a conveyance is estopped from denying the validity of such instrument or the authority to make and execute such instrument unless fraud is involved. To the same effect see 16 O.S.1951 § 11. Clearly under such rule Cecil Votaw is estopped to question the title of his brothers to their interest in the property involved here.

For the foregoing reasons I believe that the judgment herein should be reversed and I therefore respectfully dissent.